Totten, J.,
delivered the opinion of the court.
The plaintiff sued the defendant in the ‘ circuit court of Tipton, for oral slander. There was a verdict in his favor for $235: thereon, on motion of the defendant, judgment was arrested, and the plaintiff appealed in error.
The declaration contains several counts, stating the words spoken, which are as follows:
*477 “I don’t want anything to do with a man that sells liquor to my negroes on Sunday, and he does that thing.” “You can tell him, I will not go to such a man’s 'house, who sells my negroes liquor without my permission, and that I know he does,” &c.
The words are laid with proper innuendoes, to the effect that the plaintiff had sold spirituous liquors to defendant’s slaves, without permission, and contrary to law.
The question is, do the words per se import actionable slander?
Counsel for defendant assume the position, that in the absence of special damages, no action will lie for words spoken, unless the offence imputed be of the grade of felony. And the offence here imputed being a misdemeanor, the action will not lie. It seems, that in this State, we have no reported case, decisive of the question.
We may observe in the first place, that crime in a general ■ sense implies any act done or omitted in violation of public law, and for which the person is liable to punishment by indictment, presentment or impeachment. In reference to the grade of the offence, it is technically called crime or misdemeanor.
Thus, in 4 Bl. Com., 5, it is said: “a crime or misdemeanor is an act committed or omitted in violation of public law, either forbidding or commanding it. This general definition comprehends both crimes and misdemeanors, which, properly speaking, are mere sy-nonimous terms, though in common usage, the word crime is made to denote such offences as are of a deeper and more atrocious dye: Whilst smaller faults *478 and omissions of less consequence, are comprised nnder the gentler name of misdemeanors only.”
In the common law, the word misdemeanor is used in contradistinction to felony, and into these two classes, all offences for which an indictment, presentment or impeachment will lie, are divided. It is a general rule, that any words which impute an offence of the grade of felony, are actionable of themselves, on account of the highly penal nature of its punishment. As to this there is no question.
An English writer of great reputation, deduces from the decided cases a rule of more comprehensive import. He states the rule to be, that, “ to impute any crime or misdemeanor for which corporal punishment may be inflicted in a temporal court, is actionable without proof of special damage” Vid. 1 Starkie on Slander, 43, margin.
We do not concur in this rule to its full extent: the course of judicial opinion in this State, requires that it be in some degree limited and restricted. Words which impute trespass, assault, battery and the like, are not actionable per se: and yet these are offences punishable by indictment or presentment.
In Onslow vs. Horne, 3 Wils., 177, a well considered case; De Grey, O. J. says, “The rule is, that the words must contain an express imputation of some crime liable to punishment. Some capital offence, or other infamous crime or misdemeanor: and the charge upon the person spolcen of must be precise.”
In New York, it is held, that “in case the charge, if true, will subject the party charged to an indictment for a crime involving moral turpitude, or subject him *479 to an infamous punishment, then the words will loe i/n themselves actionable.” Vid. Broaker vs. Coffin, 5 Johns. R., 191. Young vs. Miller, 3 Hill R., 22.
Though the word crime is used, yet misdemeanors are included under the rule. It is evident that the doctrine in Hew York rests upon that declared in the case of Onslow vs. Horne, 3 Wils., 177, and the principle of these cases seems to us to be founded in reason and authority.

We eonelude, that where the charge imputes an of-fence, whether a crime oi' misdemeanor, involving moral turpitude, and for which an indictment or presentment will lie, then, the words that impu,te it are in themselves actionable.

We apprehend that no more certain and definite rule can be stated, without either impairing the remedy for slander, or extending it too far. All felonies are of course included; and as to misdemeanors, such only are included as involve moral turpitude. It may he said, indeed, that every offence is in some degree immoral; yet it is clear that this immorality exists in different and well defined degrees.
Moral turpitude is said to imply “inherent baseness or vileness of principle in the human heart; extreme depravity.” Vide "Webster.
It is easy to see, that trespass, assault, battery and the like, are not within the rule: while other misdemeanors which imply extreme baseness and depravity of heart, are properly included.
Thus, in Martin vs. Stillwell, 13 Johns. R., 275, words which charged the plaintiff with keeping a bawdy house, were held to be actionable; such a house being *480 a common nuisance, and the person keeping it subject to indictment.
In Lindsey vs. Smith, 7 Johns. R., 360, it was held actionable to charge a justice of the peace with the offence of receiving a bribe.
In Gibbs vs. Dewey, 5 Cowan, 503, the charge was, that the plaintiff had handed papers to a juror to influence or bribe the jury, and the words were held actionable.
In Young vs. Miller, 3 Hill R., 21, the charge was “you have removed my land mark, and cursed is he that romoveth his neighbor’s land mark,” and the words were held actionable, the offence being a misdemeanor, and the offender subject to punishment by indictment.
So, to say of one, “he is a false poller and extortioner,” or of a justice of peace, “he sent a warrant for A. for suspicion of felony, and sent B. to give him warning to bo absent,” was held to be actionable. 1 Com. Dig., 371, 373.
It will be seen that in all these cases, the offences imputed were mere misdemeanors, but of such nature and character as imply a high degree of moral turpitude.
Now in the present case, the charge is, that the plaintiff sold spirituous liquors to negro slaves; with the aggravation that he sold to them on Sunday, and contrary to law. This is a misdemeanor for which an indictment will lie, and on conviction the offender shall be fined, and also, imprisoned not less than a week, nor more than thirty days, in the common jail. Act 1843, ch. 141, §2.
If he be a licensed tippler, (which, however, is not the present case from any thing that appears) he takes *481 an oath not to sell to slaves without leave of the owner, and if he violate it, is made guilty of the crime of perjury. Act 1846, ch. 90, § 3, 4.
From this rigorous legislation, we may infer the great evil incident to the odious practice of selling intoxicating liquors to negro slaves. By secret traffic for petty gain, the offender causes the morals of the slave to be utterly depraved, and his health to be impaired. It is to be presumed too, that he will not hesitate to make spoil of the little means of the poor slave in the course of the secret and unlawful barter: it may be, on the Sabbath day.
Now, what is' the moral grade of this offence? No one will hesitate to say that it is odious, and that it involves the highest degree of moral turpitude. No person guilty of the offence can maintain any esteem or respect among men. In the present case, the defendant refused to go to the plaintiff’s house, or to hold any intercourse with him, because, as he said, the plaintiff was guilty of this degrading vice.
We conclude that the words were actionable per se. Let the judgment in arrest be reversed, and render judgment on the verdict.
Judgment reversed.